UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

(Filed Electronically)

| | |
|---|---|
| MARTICE N. MCRAE | ) |
| | ) |
| -and- | ) |
| | ) |
| DESMOND D. DUNCAN | ) |
| | ) **COMPLAINT** |
| *PLAINTIFFS* | ) |
| | ) |
| V. | ) CASE NO.:  3:19-CV-313-RGJ |
| | ) |
| LOUISVILLE/JEFFERSON COUNTY | ) |
| METRO GOVERNMENT | ) |
| | ) |
| Serve: | ) |
| 527 W. Jefferson Street, 4th Floor | ) |
| Louisville, KY 40202 | ) |
| | ) |
| -and- | ) |
| | ) |
| TRINITY SERVICES GROUP | ) |
| | ) |
| Serve: CT Corporate System | ) |
| Registered Agent | ) |
| 306 W. Main St. Suite 512 | ) |
| Frankfort, KY 40601 | ) |
| | ) |
| *DEFENDANTS* | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Comes the Plaintiffs, MARTICE N. MCRAE (hereinafter "MR. MCRAE") and

DESMOND D. DUNCAN (hereinafter "MR. DUNCAN"), by and through their undersigned

counsel, and hereby bring this Complaint before this Honorable Court, seeking damages for the

violations of the federal rights of MR. MCRAE and MR. DUNCAN, by the named Defendants, as

1

well as state law causes of action.  In support of their action thereof, the Plaintiffs now hereby allege the following:

## PARTIES

1.      The Plaintiff, MR. MCRAE, is now and at all times relevant hereto has been, a lawful and physical resident of Louisville, Jefferson County, Kentucky in the United States of America.  He is also a current inmate of the Louisville Metro Department of Corrections (hereinafter "LMDC").

2.      The Plaintiff, MR. DUNCAN, is now and at all times relevant hereto has been, a lawful and physical resident of Louisville, Jefferson County, Kentucky in the United States of America.  He is also a current inmate of the Louisville Metro Department of Corrections (hereinafter "LMDC").

3.      At all times material hereto Defendant, LOUISVILLE - JEFFERSON COUNTY METRO GOVERNMENT (hereinafter "Defendant METRO GOVERNMENT"), is and has been, a political subdivision of the Commonwealth of Kentucky, organized and existing under the laws of the Commonwealth of Kentucky with a principle place of business located at 527 W. Jefferson Street, 4th Floor, Louisville, KY 40202.

4.      At all times material hereto Defendant METRO GOVERNMENT, pursuant to Kentucky Revised Statute (KRS) 67C.101 has and does operate and control LMDC, its corrections officers, employees, agents, and representatives.  Pursuant to KRS 67C.101, Defendant METRO GOVERNMENT is ultimately responsible for the hiring, training, and supervision of these persons, and is ultimately responsible for the establishment or condonation of the policies described elsewhere in this Complaint.

5.      At all times material hereto Defendant METRO GOVERNMENT and its agencies, employees and agents were acting within the course and scope of their powers and/or employment. At all times material hereto, Defendant METRO GOVERNMENT was responsible for the establishment or condonation of all LMDC policies, either formally or by custom, regarding employment, training, retention. Thus, the agencies, employees and agents of Defendant METRO GOVERNEMENT were in their official capacity and vicariously viable for tortious acts and omissions pursuant to KRS 70.040 and Jones v. Cross, 260 S.W. 3d. 343 (Ky 2008).

6.      The Defendant TRINITY SERVICES GROUP (hereinafter "Defendant TRINITY") is a Foreign Limited Liability Company, registered with the Kentucky Secretary of State's Office and is authorized to conduct business within the Commonwealth of Kentucky.  Upon information and belief, Defendant TRINITY contracts with Defendant METRO GOVERNEMNT, by way of LMDC, to provide food necessary for the care and well-being of person incarcerated within LMDC facilities.  As such, Defendant TRINITY is an agent of Defendant METRO GOVERNMENT.

## JURISDICTION AND VENUE

7.      This is an action for damages in excess of Fifteen thousand dollars ($15,000.00), exclusive of attorneys' fees, costs, and interest.

8.      Plaintiffs' claims arise pursuant to 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, as well as under the statutory and common laws of the Commonwealth of Kentucky.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 over the § 1983 claims pursued herein.

9.      This Court thereby has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims in this Complaint as they are so related to the claim or claims

that form the basis of the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     That venue is proper in this Court pursuant to 28 U.S.C. § 1391.

11.     All conditions precedent to the maintenance of this action have been performed or have occurred prior to the filing of this action.

## GENERAL FACTS
### (APPLICABLE TO ALL COUNTS)

12.     That the Plaintiffs bring this suit in order to recover their damages for personal injuries that they sustained while incarcerated and under the care and control of LMDC, an agent of Defendant METRO GOVERNMENT.

13.     That on or about June 21, 2018, Plaintiff, MR. MCRAE, received a food tray containing his lunch.  As MR. MCRAE bit into his food he subsequently bit down on a piece of metal that was hidden within the food on his tray.  The jagged piece of metal caused a laceration to the inside of MR. MCRAE's mouth.

14.     That MR. MCRAE reported his injury to the corrections officer, Sergeant Peter Allen, who directed MR. MCRAE to medical staff member Nurse Taylor to be treated.

15.     That MR. MCRAE was placed on pain relieving medication and ordered to have a tetanus shot.  MR. MCRAE witnessed photos being taken of the piece of metal and he was informed by medical staff that the piece of metal would be placed inside of a medical glove and placed in MR. MCRAE'S inmate property.

16.     That Sergeant Allen completed an Incident Report, Report number 00092546, which indicates that photographs were taken of the metal object and that Lieutenant Miller was notified of the incident.

17.    That MR. MCRAE was seen by a medical staff member on July 5, 2018, with continued complaints that his injury was still causing "intermitted pain" which gave him headaches.

18.    That on or about September 15, 2018, Plaintiff, MR. DUNCAN, received a food tray containing his lunch.  As MR. DUNCAN bit into his food he subsequently bit down on a something hard that was hidden within the food on his tray.  When he spit this matter out, MR. DUNCAN realized that the hard object was a piece of wood.  He also located a portion of his tooth in the matter, which had broken off due to the piece of wood.

19.    That MR. DUNCAN reported his injury to corrections officers, Officer Buran, who directed MR. DUNCAN to medical staff to be treated. The nurse to whom Officer Buran directed MR. DUNCAN to then took a picture of the tray and the object. MR. DUNCAN is unclear if the object was preserved.

20.    That no outside medical or dental care was ever offered or provided to either Plaintiff to treat their injuries.

21.    That since 1990 Defendant TRINITY has been the largest private contractor in the United States that is dedicated to the corrections industry business.  The company serves forty-three (43) states, the U.S. Virgin Islands and Puerto Rico and has more than 3,400 employees.

22.    That Defendant METRO GOVERNMENT, through its agent, LMDC, contracted with Defendant TRINITY at the time of both incidents for the supply and preparation of all jail-provided inmate meals.

23.    That both of the Defendants' actions violated the civil rights of MR. MCRAE and MR. DUNCAN by knowingly and willfully failing to provide LMDC inmates with adequate food services, namely uncontaminated food, in violation of 42 U.S.C. § 1983.

5

24.     That 42 U.S.C. § 1983 provides that:

"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress..."

25.     That Defendants METRO GOVERNMENT and TRINITY, or their agencies, agents, contractors or employees, acting under the color of the law of the Commonwealth of Kentucky, and in the course and scope of their duties as the food service provider to LMDC, subjected MR. MCRAE and MR. DUNCAN to a deprivation of their constitutional rights.

26.     That in cases of pretrial detainees claiming violations of 42 U.S.C. § 1983, the constitutional protections applied are those guaranteed by the Due Process Clause. *See* Hamm v. Dekalb County 774 F.2d 1567 (1985) (For the period of time Hamm was incarcerated as a pretrial detainee the claims will be considered under the due process clause since states may not punish pretrial detainees at all prior to their lawful conviction of a crime.) See also Jones v. Diamond, 452 U.S. 959 (1981) (While a sentenced inmate may be punished in any fashion not cruel and unusual, the due process clause forbids punishment of a person awaiting trial but not yet adjudged guilty of any crime.)

27.     That the Supreme Court in Bell v. Wolfish articulated the standard for determining when constraints and conditions of confinement constitute punishment thus prohibiting their imposition on pretrial detainees. 441 U.S. 575, 533-34, 537 (1979).  The Court stated if a restriction or condition is not "reasonably related to a legitimate goal" — i.e. if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Id. at 539.

28.     That while a state's decision to maintain the quality of inmate food at a reasonable level, rather than improve or increase its provisions of that necessity, may serve a legitimate purpose (i.e. to reasonably limit the cost of detention), that same legitimate purpose will not justify the provision of such a necessity at **below some minimally adequate level**. Id. (emphasis added).

29.     That the consistent and regular finding of foreign objects within inmate trays at LMDC is indicative of Defendants' METRO GOVERNMENT and TRINITY'S acquiescence and condonation of Defendant TRINITY'S custom and/or practice of maintaining a below minimally adequate level of quality for inmate food, in violation of federal rights.

30.     That as a result of these unconstitutional and tortuous actions by the Defendants and/or their agents, MR. MCRAE and MR. DUNCAN both sustained injuries, which caused them both to suffer physical pain and disfigurement, mental anguish, emotional trauma, and future expected economic damages.

## COUNT I: VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (Against Defendant METRO GOVERNMENT)

31.     The Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation and statement contained in all previous paragraphs of this Complaint.

32.     In order to establish a municipal liability under 42 U.S.C. § 1983, a Plaintiff must show that the alleged constitutional violation occurred because of a municipal custom or policy. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  That requisite showing can be made by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of

tolerance or acquiescence of federal rights violations." <u>Burgess v. Fischer</u>, 735 F.3d 462, 478 (6th Cir. 2013).

33.     Defendant METRO GOVERNMENT is liable for MR. MCRAE'S and MR. DUNCAN'S injuries under § 1983 based on facts that indicate: (i) an official with final decision-making authority ratified illegal actions and (ii) the existence of a custom of tolerance or acquiescence of the violations of federal rights.

**A.  An Official with Final Decision-Making Authority Ratified Illegal Actions**

34.     Defendant METRO GOVERNMENT maintains control over the Metro Office of Internal Audit (hereinafter "the Office"), who performs independent, objective assurance and consulting activities for various Louisville Metro Government departments, offices, boards, activities and agencies to assist policy makers and program managers in providing high-quality services in a manner that is accountable, efficient, effective, and ethical. They seek to do so by bringing a systematic, disciplined approach to evaluate and improve the effectiveness of risk management, control, and governance processes.

35.     The Office issues Corrective Action Plans to the Mayor and his Chief of Staff, Agency Directors, the Louisville Metro Council, and directors of the audited agency.

36.     LMDC is one of the agencies subject to review of the Office.

37.     Pursuant to an audit, the Office has access to all of LMDC's information and resources, including but not limited to, Incident Reports, Action Requests, Inmate Grievance Forms, legal actions, policy and procedure manuals and daily records.

38.     Therefore, all allegations (made either internally or through legal action) of foreign object located within food at LMDC which caused injuries would be subject to review by the

Office, and recommendations can be made by the Office to officials of Defendant METRO GOVERNMENT pursuant to the findings of these audits.

39.     As there is no public record to Plaintiffs' knowledge of any corrective actions being taken pursuant to a recommendation by the Office, it can be inferred that either the Office failed to review the allegations regarding these incidents, or, if the Office did conduct reviews of such incidents, that the Office subsequently ruled in favor of its agency, LMDC, and its contractor, Defendant TRINITY.

40.     Nor does there exist, to Plaintiffs' knowledge, any public record of recommendations made by the Office to officials of Defendant METRO GOVERNMENT recommending that any changes be made to LMDC's policies, procedures, customs and practices in an effort to reduce this type of incident despite internal jail records of many prior incidents where foreign objects in the food that have caused injury has been alleged.  In the Office's recent fiscal year Audit Plans the Office has made various recommendations for improving Metro Government agencies, including LMDC, but makes no recommendations for reducing the number of incidents involving foreign objects in the food causing injuries.

41.     As such, Defendant METRO GOVERNMENT is liable under § 1983 based on a deliberate indifference and patterned failure to meaningfully investigate prior allegations of unconstitutional conduct.  Leach v. Shelby Cty. Sheriff, 891 F.2d 1241 (6th Cir. 1989).

42.     Such a failure by the Office to meaningfully investigate these prior allegations and issue recommendations is the moving force behind the injuries of MR. MCRAE and MR. DUNCAN.

**B.  The existence of a custom of tolerance of the violations of federal rights**

43.    DEFENDANT METRO GOVERNMENT has contracted with Defendant TRINITY since at least the 2013 fiscal year.

44.    Per state law, that contract must be renewed yearly.

45.    Since that time, Defendant TRINITY has been involved in numerous complaints and/or litigation involving the quality of their food.  Many these incidents/complaints/lawsuits are a matter of public record, and available to Defendant METRO GOVERNMENT for review. The following include only a fraction of the complaints against Defendant TRINITY to which Defendant METRO GOVERNMENT should have been aware of:

     a.  In 2015 the Michigan Department of Corrections fined Defendant TRINITY $3.8 million for staff shortages, unauthorized meal substitutions and other violations – including an incident in which prison kitchen workers were ordered by Trinity managers to sort a bag of rotting potatoes and discard just the maggot-infested ones.  Other problems included food stored at the wrong temperature, workers with expired food handler permits, storing food too close to restrooms, and not rinsing soap and cleaning chemicals from utensils.

     b.  Complaints also arose after Trinity took over food services at the Gordon County jail in Calhoun, Georgia in 2014. Prisoners reported in January 2015 that they fought hunger by licking syrup packets, eating toothpaste and drinking lots of water. The Atlanta Journal-Constitution reported the same month that some prisoners at the jail complained of weight loss. One prisoner filed repeated grievances consisting of one word: "Hungry."

c.   A riot broke out on November 19, 2016 at the El Paso County Criminal Justice
Center in Colorado Springs, Colorado over the quality of food provided by
Trinity, after county officials switched from Aramark earlier that year.

d.   The following month, a Muslim prisoner at the jail filed a complaint claiming
that Trinity refused to provide a halal diet – violating an American Correctional
Association standard that specifies special diets are to be "provided for inmates
whose religious beliefs require the adherence to religious dietary laws when
approved by the facility chaplain."

e.   Another El Paso County Criminal Justice Center prisoner, Ashley Peterson, said
Trinity had failed to provide her with gluten-free meals for a month after she
entered the jail, resulting in internal bleeding.

46.   Based on the overwhelming amount of litigation that Defendant TRINITY is
involved in regarding their food service quality, Defendant METRO GOVERNMENT was or
should have been aware of such complaints.

47.   Based on the volume of complaints, Defendant METRO GOVERNMENT should
have sought to contract with a different food service provider in order to ensure for the proper care
for their inmates.

48.   Thus, at all times relevant to this action, Defendant METRO GOVERNMENT had
unofficial policies, practices, procedures and/or customs allowing and/or condoning the consistent
and regular issue of inadequate food service at LMDC and acquiesced and/or condoned food
service at LMDC that is below minimally adequate level for the quality of inmate food.

49.   Defendant METRO GOVERNMENT had the ultimate control over these unofficial
policies, practices, procedures, and/or customs of LMDC and, through its inactions, encouraged

its agencies/agents to utilize these unofficial policies that they knew would improperly and unconstitutionally result in serious injury to inmates within LMDC.

50. The aforementioned policies, practices, procedures, and/or customs were therefore consciously and officially sanctioned by METRO GOVERNMENT policymakers. Alternatively, the aforementioned policies, practices, procedures, and/or customs were so widespread and longstanding that METRO GOVERNMENT's policymakers must have known and therefore, were considered unofficial custom, usage, and practice with the force of law. Nonetheless, no action was taken to stop it.

51. Defendant METRO GOVERNEMENT thereby aided in the creation of this culture of protection from punishment by historically, either knowingly or wantonly, failing to make recommendations to correct issues with below adequate inmate food service, to adequately investigate complaints through the Office of foreign objects repeatedly being found in the food, and to take corrective action despite overwhelming evidence of improper management of food services by its agent LMDC and Defendant TRINITY.

52. Through such inaction, Defendant METRO GOVERNMENT aided in the institution a program that they either knew or should have known would amount to below-adequate food service within LMPC and a deliberate indifference to the constitutional rights of the Plaintiffs and other similarly situated inmates.

53. The incidents that are the subject of this Complaint are not isolated incidents, but rather two of countless others in a pattern and practice of misconduct that has been historically accepted and/or condoned by Defendant METRO GOVERNMENT.  Thus, Defendant METRO GOVERNMENT had direct and actual, or at minimum constructive, knowledge of the

constitutional violations that were occurring under its policy of permitting inadequate food service, as LMPC maintains numerous complaints of inadequate food service.

54.     Thus, by instituting this grossly unconstitutional unofficial policy, practice, procedure, and/or custom, Defendant METRO GOVERNMENT exhibited willful, wanton and callous disregard for the constitutional rights of MR. MCRAE and MR. DUNCAN and was the moving force that caused the violation of MR. MCRAE and MR. DUNCAN'S constitutional rights under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

55.     Therefore, the Plaintiffs have shown that the constitutional violation of MR. MCRAE and MR. DUNCAN'S rights occurred because of a municipal custom or policy that (i) an official with final decision-making authority ratified and (ii) occurred because of the existence of a custom of tolerance or acquiescence of federal rights violations.   Said conduct makes Defendant METRO GOVERNMENT is liable for MR. MCRAE and MR. DUNCAN'S injuries.


**WHEREFORE**, the Plaintiffs, MARTICE N. MCRAE and DESMOND D. DUNCAN, hereby demand judgment against Defendant METRO GOVERNMENT, for all damages, including costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.


## COUNT II: VIOLATIONS OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (Against Defendant TRINITY)

56.     The Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation and statement contained in all previous paragraphs of this Complaint.

57.     Defendant TRINITY is liable for MR. MCRAE'S and MR. DUNCAN'S injuries under § 1983 based on facts that indicate: (i) an official with final decision-making authority ratified illegal actions, (ii) The existence of a policy of inadequate training or supervision, and (iii) the existence of a custom of tolerance or acquiescence of the violations of federal rights.

**A.  An Official with Final Decision-Making Authority Ratified Illegal Actions**

58.     Defendant METRO TRINITY hires multiple supervisors and employees to work within LMDC whose duties include: preparing, assisting, or instructing inmate labor and/or team members in the preparation of a variety of food items in accordance with departmental work production standards, standardized recipes, and work instructions; following assigned facility housekeeping and safety practices in all preparation, oversight, and serving of correctional facility meals.

59.     Should any issues with food quality arise, said supervisors and employees would be responsible for issuing corrective actions or notifying their employer of the issues so that necessary changes may be made.

60.     Multiple inmate grievances have been filed by inmates within LMDC alleging less than adequate food services.

61.     Upon information and belief, employees of Defendant TRINITY have willfully ignored their ability to have access to or conduct a review of these grievances.

62.     As such, Defendant TRINITY is liable under § 1983 based on a deliberate indifference and patterned failure to meaningfully investigate prior allegations of unconstitutional conduct.  Leach v. Shelby Cty. Sheriff, 891 F.2d 1241 (6th Cir. 1989).

63.     Such a failure by Defendant TRINITY to meaningfully investigate these prior allegations and issue recommendations is the moving force behind the injuries of MR. MCRAE and MR. DUNCAN.

**B.   The existence of a policy of inadequate training or supervision**

64.     Defendant TRINITY'S failure to properly train, re-train, and supervise its employees amounts to a deliberate indifference to the rights of persons with whom the untrained employees come into contact with, and as such a violation of § 1983.

65.     Specifically, Defendant TRINITY failed to properly train, retrain, and supervise its employees with respect to adequate food service quality.   Plaintiffs assert this based on the following:

    a.  Chapter 501 of the Kentucky Administration Regulations (KAR) section 3:100 sections nine (9) and twelve (12) command that jail personnel shall directly supervise all food prepared within the jail and that the jailer, jail administrator, or jail personnel shall inspect the food service area daily.

    b.  Per Trinity hiring posts, Food Service Supervisor duties include: preparing, assisting, or instructing inmate labor and/or team members in the preparation of a variety of food items in accordance with departmental work production standards, standardized recipes, and work instructions; following assigned facility housekeeping and safety practices in all preparation, oversight, and serving of correctional facility meals.   These are the same duties that are required to be performed under 501 KAR 3:100(9) and (12).

    c.  Multiple inmate grievances have been filed within LMDC alleging less than adequate food services.

    d.   Defendant TRINITY has not, under information and belief, issued any remedial training or education to employees within LMDC to correct the alleged issues, as evidenced by the continuation of said allegations and complaints.

66.    Defendant LMPD's failure to properly train, re-train and supervise its officers amounts to a deliberate indifference to the rights of persons with whom the untrained employees come into contact with.

67.    Defendant TRINITY'S failure to issue formal policies and procedures to train, re-train, and supervise its employees with regards to the issues adequate food service was so reckless or grossly negligent that future misconduct is almost inevitable or would properly be characterized as substantially certain to result.

68.    Defendant TRINITY particularly failed to implement any meaningful corrections or changes to policies and practices after prior-reported incidents of foreign object being found in inmate food, which occur on a routine basis. There is also no indication that Defendant TRINITY issued any kind of remedial training or policies pursuant to this complaint being filed.

**C.  The existence of a custom of tolerance of the violations of federal rights**

69.    At all times relevant to this action, Defendant TRINITY had unofficial policies, practices, procedures and/or customs allowing and/or condoning the consistent and regular finding of foreign objects within inmate trays at LMDC and acquiescing and/or condoning food service at LMDC that is below minimally adequate level for the quality of inmate food

70.    Defendant TRINITY had the ultimate control over these unofficial policies, practices, procedures, and/or customs and, through its inactions, encouraged its agencies/agents to utilize these unofficial policies that they knew would improperly and unconstitutionally result in serious injury to inmates within LMDC.

71.     The aforementioned policies, practices, procedures, and/or customs were therefore consciously and officially sanctioned by Defendant TRINITY policymakers. Alternatively, the aforementioned policies, practices, procedures, and/or customs were so widespread and longstanding that TRINITY's policymakers must have known and therefore, were considered unofficial custom, usage, and practice with the force of law. Nonetheless, no action was taken to stop it.

72.     Defendant TRINITY thereby aided in the creation of this culture of protection from punishment by historically, either knowingly or wantonly, failing to make recommendations to correct issues with below adequate inmate food service, to adequately investigate complaints of foreign objects repeatedly being found in the food, and to take corrective action despite overwhelming evidence of improper management of food services.

73.     Through such inaction, Defendant TRINITY aided in the institution a program that they either knew or should have known would amount to below-adequate food service within LMDC and a deliberate indifference to the constitutional rights of the Plaintiffs and other similarly situated inmates.

74.     The incidents that are the subject of this Complaint are not isolated incidents, but rather two of countless others in a nation-wide pattern and practice of misconduct that has been historically accepted and/or condoned by Defendant TRINITY.  Thus, Defendant TRINITY had direct and actual, or at minimum constructive, knowledge of the constitutional violations that were occurring under its policy of permitting inadequate food service.

75.     Thus, by instituting this grossly unconstitutional unofficial policy, practice, procedure, and/or custom, Defendant METRO GOVERNMENT exhibited willful, wanton and callous disregard for the constitutional rights of MR. MCRAE and MR. DUNCAN and was the

moving force that caused the violation of MR. MCRAE and MR. DUNCAN'S constitutional rights under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

76.     Therefore, the Plaintiffs have shown that the constitutional violation of MR. MCRAE and MR. DUNCAN'S rights occurred because of a municipal custom or policy that (i) an official with final decision-making authority ratified and (ii) occurred because of the existence of a custom of tolerance or acquiescence of federal rights violations.   Said conduct makes Defendant METRO GOVERNMENT is liable for MR. MCRAE and MR. DUNCAN'S injuries.


**WHEREFORE**, the Plaintiffs, MARTICE N. MCRAE and DESMOND D. DUNCAN, hereby demand judgment against Defendant TRINITY for all damages, including costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

### <u>COUNT III: NEGLIGENCE BASED ON RES IPSA LOQUITUR</u>
**(Against BOTH Defendants)**

77.     The Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation and statement contained in all previous paragraphs of this Complaint.

78.     In order for any negligence claim to be successful, the plaintiff must show proof of:

a.   a duty owed by the defendant to the plaintiff,

b.   breach of that duty,

c.   injury to the plaintiff, and

      d.   legal causation between the defendant's breach and the plaintiff's injury. <u>Wright v. House of Imports, Inc.</u>, 381 S.W.3d 209 (Ky. 2012); <u>Lewis v. B & R Corp.</u>, 56 S.W.3d 432, 436–37 (Ky. App. 2001).

79.    The standard of care applicable to a common-law negligence action is that of ordinary care, that is, "such care as a reasonably prudent person would exercise under the circumstances." <u>Slusher v. Brown</u>, 323 S.W.2d 870, 872 (Ky. 1959).

80.    Here, the Defendants owed a duty to the Plaintiff's to exercise the care of a reasonably prudent person in preparing and providing uncontaminated food, reasonably free from foreign objects, that could injure the inmates who consume the food.

81.    The Defendants breached this duty, as described throughout this Complaint, by employing and condoning the practice of providing less than adequate food services to the inmates of LMDC, which the Defendant's knew, or should have known, could foreseeably cause injury by foreign objects in the food as a result of their failure to exercise ordinary care.

82.    The foreign objects would not have contaminated the Plaintiffs' food but-for the negligence of the Defendants, and as a direct and proximate result of being exposed to the foreign objects in the contaminated food, the Plaintiffs suffered injuries, which caused pain and suffering.

83.    Further, the doctrine of res ipsa loquitur "recognizes that as a matter of common knowledge and experience the very nature of an occurrence may justify an inference of negligence on the part of the person who controls the instrumentality causing the injury." <u>Bell & Koch, Inc. v. Stanley</u>, 375 S.W.2d 696, 697 (Ky. 1964).  The elements of res ipsa loquitur require that there be a showing that:

      a.   The defendant must have had full management and control of the instrumentality which caused the injury.

    b.   The circumstances must be such that, according to common knowledge and the experience of mankind, the accident could not have happened if those having control and management had not been negligent.

    c.   The plaintiff's injury must have resulted from the accident. <u>Cox v. Wilson</u>, 267 S.W.2d 83, 84 (Ky. 1954).

84.    Defendant TRINITY is the party who is responsible for providing for and preparing the food that LMDC served the Plaintiffs. LMDC is an agent of Defendant METRO GOVERNMENT, who has ultimate management and control over the functions of the facility. Thus, both Defendants had full and exclusive management and control over the food and food trays that were used by the Plaintiffs.

85.    Here, as metal and wood objects are not allowed within LMDC inmate dorms (in order to ensure inmate and officer safety) the accident could not have happened if those having control and management (the Defendants) had not been negligent in their management and control over the food and food trays that were used by the Plaintiffs.

86.    The Defendant's failure to comply with all applicable laws, regulations, rules, orders and policies was the direct and proximate cause of the Plaintiffs' injuries, which caused them pain and suffering.

87.    Based on an application of Res Ipsa Loquitur principles, the Defendants were inherently negligent, and MR. MCRAE and MR. DUNCAN are therefore entitled to recover their compensatory damages, to be determined at trial.

88.    Further, the conduct of the Defendants was so willful, wanton and/or malicious as to warrant the award of punitive damages by virtue of KRS § 446.070.

**WHEREFORE**, the Plaintiffs, MARTICE N. MCRAE and DESMOND D. DUNCAN, hereby demand judgment against Defendants METRO GOVERNMENT and TRINITY, for all damages, including costs and reasonable attorneys' fees pursuant to KRS § 411.130, and any other relief this Court deems just and proper.

## COUNT IV: VIOLATIONS OF THE PRODUCTS LIABILITY ACT OF KENTUCKY
### (Against Defendant TRINITY)

89.     The Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation and statement contained in all previous paragraphs of this Complaint.

90.     KRS § 411.300 reads:

> As used in KRS 411.310 to 411.340, a "product liability action" shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product.

91.     Defendant TRINITY is liable under the Products Liability Act of Kentucky (KRS § 411.300 to § 411.340), for the faulty preparation of their product, which ultimately led to the Plaintiffs sustaining injuries from biting into foreign objects located within their contaminated inmate trays.

92.     KRS § 411.310 reads:

> In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured.

93.     Based on the details and facts of this Complaint, as laid out above, Plaintiffs have made a showing, by a preponderance of the evidence, that the product, namely the food trays prepared by Defendant TRINITY, were defective in design.

94.     In particular, the facts of the Complaint, as well as other currently unavailable evidence, support the finding that the preparation, assembly and packaging of inmate trays within LMDC was performed utilizing methods of manufacture and testing which do not conform to the generally recognized and prevailing standards at the time the design was prepared and the product was manufactured. Specifically, Plaintiffs allege, upon information and belief, that employees of Defendant TRINITY did not exercise reasonable care, control and supervision of inmate workers with LMDC who are responsible for food preparation.

95.     Further, the plaintiffs did not fail to exercise ordinary care in the circumstances in their use of the product.

96.     Further, the conduct of the Defendants was so willful, wanton and/or malicious as to warrant the award of punitive damages by virtue of KRS § 446.070.


**WHEREFORE**, the Plaintiffs, MARTICE N. MCRAE and DESMOND D. DUNCAN, hereby demand judgment against Defendant TRINITY, for all damages, including costs and reasonable attorneys' fees pursuant to KRS § 411.130, and any other relief this Court deems just and proper.

### COUNT V: VIOLATIONS OF THE FOOD, DRUG AND COSMETIC ACT
### (Against Defendant TRINITY)

97.     The Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation and statement contained in all previous paragraphs of this Complaint.

98.    KRS § 217.175 contains certain prohibited acts, as prescribed by the Food, Drug and Cosmetic Act.

99.    Per KRS § 217.175(1), Defendant TRINITY is prohibited from the "the manufacture, sale, or delivery, holding or offering for sale of any food…that is adulterated or misbranded. Such conduct is criminally punishable pursuant to KRS 217.992.

100.    KRS § 217.025 details when food is "adulterated".  Relevant sections read:

A food shall be deemed to be adulterated:

(1)(a) If it bears or contains any poisonous or deleterious substance which may render it injurious to health…; or

(1)(d) (d) If it has been produced, prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered diseased, unwholesome, or injurious to health; or

101.    Here, as alleged and detailed in the Complaint above, Defendant TRINITY either manufactured, distributed and/or sold a product that was adulterated, as their inmate trays contained deleterious substances that were injurious to the Plaintiffs health.

102.    Any person who violates any of the provisions of KRS § 217.175 shall be guilty of a misdemeanor.  Person's convicted of a misdemeanor under this Act are also subject to civil penalties.

103.    As a direct and proximate result of the negligent actions of Defendant TRINITY, the Plaintiffs, MR. MCRAE and MR. DUNCAN, experienced pain and suffering, past, present and future to their loss, harm and detriment in an amount to be proven at trial.

104.    Further, the conduct of the Defendants was so willful, wanton and/or malicious as to warrant the award of punitive damages by virtue of KRS § 446.070.

**WHEREFORE**, the Plaintiffs, MARTICE N. MCRAE and DESMOND D. DUNCAN, hereby demand judgment against Defendant TRINITY, for all damages, including costs and reasonable attorneys' fees pursuant to KRS § 411.130, and any other relief this Court deems just and proper.

## COUNT VI: PUNITIVE DAMAGES
### (Against Defendant TRINITY)

105.    Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation and statement contained in all previous paragraphs of this Complaint.

106.    That pursuant to Kentucky common law and KRS § 411.184 the conduct, actions and/or inactions of Defendant TRINITY, as described herein, were so grossly reckless and/or negligent and/or wanton and/or oppressive and/or malicious and/or fraudulent so as to entitles the Plaintiffs to an award of punitive damages in an amount far in excess of that amount required to establish the jurisdiction of this Court in order to deter conduct like this in the future.

**WHEREFORE**, the Plaintiffs, MARTICE N. MCRAE and DESMOND D. DUNCAN, hereby demand judgment for punitive damages against Defendant TRINITY, pursuant to 42 U.S.C. § 1983 and KRS § 411.184, and any other relief this Court deems just and proper.

**WHEREFORE**, the Plaintiffs now respectfully demand relief from the Defendants and this Honorable Court as follows:

1.    Judgment against the Defendants, jointly and severally, for compensatory damages in an amount to be determined at a jury trial;

2.      Judgment against the Defendant TRINITY, for punitive damages in an amount to be determined at a jury trial;

3.      Pre-judgement and post-judgement interest;

4.      Judgement for their costs and expenses herein expended, including reasonable and necessary attorney fees pursuant to 42 USC § 1988 and KRS § 411.130;

5.      Trial by jury on any and all issues so triable; and

6.      Any and all other relief to which the Plaintiffs may otherwise be properly entitled.

Respectfully submitted,

____/s/ Ashlea N. Hellmann_____
Ashlea N. Hellmann
__/s/ María A. Fernández_____
María A. Fernández
FERNANDEZ HAYNES & MOLONEY PLLC
401 West Main Street, Suite 1807
Louisville, Kentucky 40202
Phone: (502) 589-1001
Fax: (502) 589-7333
ahellmann@fhmlegal.com
mfernandez@fhmlegal.com
*Counsel for the Plaintiffs*