UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00313-GNS-CHL

MARTICE N. McRAE, et al.                                                                    PLAINTIFFS

v.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Trinity Services Group's Motion for Summary Judgment (DN 48). The matter is ripe for adjudication. For the reasons stated below, the motion is **GRANTED**.

**I.       STATEMENT OF THE FACTS**

Plaintiffs Martice N. McRae ("McRae") and Desmond D. Duncan ("Duncan") are inmates of the Louisville Metro Department of Corrections ("LMDC"). (Compl. ¶¶ 1-2, DN 1). Defendant Trinity Services Group ("Trinity") contracts with Louisville Metro Government ("Louisville Metro") to provide food for persons incarcerated within LMDC facilities.[1] (Compl. ¶ 6).

McRae alleges that while eating his lunch on June 21, 2018, he bit down on a piece of metal, causing injuries to the inside of his mouth. (McRae Grievance 1-2, DN 53-4). McRae filed a grievance with LMDC and his injuries were treated by the prison's medical staff. (McRae Grievance). Similarly, Duncan alleges that on September 15, 2018, he bit down on a piece of

---

[1] All claims against co-Defendant Louisville Metro Government have been dismissed. (DN 37).

1

wood while eating and injured his teeth. (Duncan Grievance , DN 53-5). Duncan also filed a grievance with LMDC and was examined by the prison's medical staff. (Duncan Grievance 1).

Plaintiffs are bringing claims for violation of their constitutional rights under Section 1983, negligence, products liability, violations of the Kentucky Food, Drug and Cosmetic Act ("KFDCA"), and punitive damages. (Compl. ¶¶ 31-106). Trinity has moved for summary judgment on all claims asserted against it. (DN 48).

## II.   JURISDICTION

Jurisdiction for the federal law claims is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims through supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## III.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which it has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which it bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV. DISCUSSION

### A. Prison Litigation Reform Act

Trinity alleges that Plaintiffs' claims are barred by the Prison Litigation Reform Act of 1995 ("PLRA") because the Plaintiffs failed to exhaust their administrative remedies prior to filing this suit. (Def.'s Mot. Summ. J. 7, DN 48). Congress enacted the PLRA in response to a sharp uptake in prison litigation in federal courts. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *see* 42 U.S.C. § 1997e. The goal of the act was to control this litigation and reduce the number of prisoner suits. *Woodford*, 548 U.S. at 84. The PLRA seeks to do to this, in part, by requiring that prisoners exhaust all available administrative remedies before filing suit in federal court challenging prison conditions. *Id.* In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court clarified when an administrative remedy is "available" to a prisoner. *Id.* at 643-44. The Court identified three situations in which an administrative remedy is not truly available: (1) when a remedy consistently operates as a dead end because prison officers are unwilling or unable to provide relief; (2) when a remedy becomes so opaque it becomes incapable of use; and (3) when prison officers prevent prisoners from taking advantage of a remedy through misrepresentation or intimidation. *Id.* Plaintiffs argue that the PLRA does not bar their claims because the administrative remedies that they did not pursue were not truly "available" to them. (Pls.' Resp. Def.'s Mot. Summ. J. 7-12, DN 53).

The facts of this case raise questions about whether McRae and Duncan had an available administrative remedy to exhaust. In relevant part, the LMDC Grievance Procedure ("Grievance Procedure") provides:

> A grievance about a specific incident is to be filed within five (5) working days after the incident occurs . . .

3

> After the grievance has been properly filed, an attempt to resolve the problem will be made through informal resolution means. The resolution stage will involve inquires or discussions to attempt to resolve the grievance . . .
>
> Response to the grievance is to be within ten (10) working days from receipt of the grievance unless special circumstances require additional attention. The inmate will have five (5) working days after the receipt of the resolution to decide whether to appeal to the next level. The Director/designee will examine the grievance and make a decision. The Director/designee's decision on an appeal is final.

(Def.'s Mot. Summ. J. Ex. 1, at 14, DN 48-2). Duncan's alleged incident occurred on September 15, 2018. (Duncan Grievance 1). Duncan claims that he turned in his grievance form on September 17, 2018, as indicated on his handwritten grievance. (Duncan Grievance 1). LMDC's entry date for the grievance is September 21, 2018—six days after the incident—which is past the five-day deadline. (Duncan Grievance 2).

Generally, a prisoner cannot meet the exhaustion requirement of the PLRA "by filing an untimely or otherwise procedurally defective administrative grievance." *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) (citing *Woodford*, 548 U.S. at 83). In this case, however, there are issues of fact that may excuse Duncan allegedly failing to file his grievance in a timely manner. First, there is a question of fact about whether the grievance was filed on September 17, 2018, or September 21, 2018. (Duncan Grievance 1-2). Second, accepting LMDC's processing date on the grievance as the date it was filed, the description in the handbook of five "working days" is unclear and contributed to the "opaque[ness]" of the Grievance Procedure. (Duncan Grievance 2); *Ross*, 578 U.S. at 643. Duncan's incident happened on a Saturday and September 21, 2018, fell on the following Friday. To a regular inmate, "working days" might be the normal Monday-Friday work week, making the Friday Duncan's grievance was processed by LMDC the last day it could be timely filed. The ambiguous language in the Grievance Procedure raises questions about the availability of the Grievance Procedure as a remedy. Even if September 21 is accepted

4

as the processing date, the ambiguous term "working days" could excuse Duncan for filing the grievance after the deadline.

A remedy is also not "available" to an inmate when a remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643 (citation omitted). A reasonable jury could find that the Grievance Procedure in this instance was a dead end. In an email chain between Meka Wingate ("Wingate"), who received Duncan's complaint, Trinity, and Louisville Metro employees Dwayne A. Clark, Martin L. Baker and Robert Buran, Wingate wrote regarding Duncan's grievance that "[she] is the not the one who investigates these situations. [She] will enter the grievance and send it to you to you to respond to, unless [she] is advised to send it to someone higher up." (Duncan Grievance 11). Wingate later indicated in the same e-mail chain that Duncan re-filed his grievance and Wingate asked again for the Louisville Metro employees and Trinity to respond to the grievance. (Duncan Grievance 11). There is no indication in the record that Wingate ever received any response, which could support the inference that the grievance procedure was a dead end since the appropriate person responsible for investigating and responding was never identified.

McRae's alleged incident occurred on June 21, 2018, and he filed his grievance on July 16, 2018. (McRae Grievance). While McRae's grievance was submitted after the deadline, he still received a response. (McRae Grievance). The Grievance Procedure states that "[t]he Grievance Counselor **may** reject a grievance that does not comply with the Grievance Procedure requirements." (Def.'s Mot. Summ. J. Ex. 1, at 14 (emphasis added)). While McRae failed to file his grievance on time, there is an issue of fact as to whether LMDC waived the deadline by responding to McRae's grievance because LMDC retains discretion to accept late grievances. (Def.'s Mot. Summ. J. Ex. 1, at 14). Further, there is some indication that LMDC may have kept

5

McRae "from taking advantage of [the] grievance process through . . . misrepresentation . . . ." *Ross*, 578 U.S. at 643. The record indicates that McRae did not receive an Inmate Handbook that includes the Grievance Procedure until July 19, 2018—3 days after he filed his grievance and 28 days after the alleged incident occurred. (McRae Record 8, DN 53-3). Evidence that McRae was kept in the dark about the Grievance Procedure could support a finding that that the Grievance Procedure was not truly an "available" remedy. *Ross*, 578 U.S. at 643.

Trinity argues that Duncan and McRae did not exhaust their full available administrative remedies because they did not file an appeal. (Def.'s Mot. Summ. J. 8). However, there is an issue of fact about whether a reasonable inmate would have understood that they received an appealable order. Plaintiffs allege that there are two responses to their grievances. (Pls.' Resp. Def.'s Mot. Summ. J. 11). The first, is the internal version labeled "Resolution Response" that LMDC keeps in its records, which indicated that the complaint was unfounded. (McRae Grievance 4; Duncan Grievance 6). The second is the external version sent to the Plaintiffs which does not indicate the outcome. (McRae Grievance 3; Duncan Grievance 5). Without an outcome noted on the notification to the prisoners an inmate may not have understood that the response they received was final and appealable.

Considering all the evidence Plaintiffs produced, there are legitimate questions of fact concerning whether the Grievance Procedure was a truly an "available" remedy that Plaintiffs would need to exhaust to bring a Section 1983 claim for prison conditions under the PLRA.[2] Therefore, summary judgment for failing to comply with grievance procedure is inappropriate.

---

[2] Trinity points to cases such as *Bradford v. Hammond*, No. 3:05CV-P300-H, 2005 U.S. Dist. LEXIS 14060, at *6-7 (W.D. Ky. July 13, 2005), where an inmate's claims were barred by the PLRA because he did not exhaust his available administrative remedies by filing an appeal even though he did not receive a response from LMDC. However, this case predates *Ross* in which the Supreme Court defined when a remedy is available.

B.     **Constitutional Violation**

Trinity asserts that Plaintiffs' Section 1983 claims should be dismissed for failure to allege a constitutional violation. (Def.'s Mot. Dismiss 9). To state a claim under Section 1983, a plaintiff must allege that "(1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under the color of state law."[3] *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (citations omitted); 42 U.S.C. § 1983.

Plaintiffs assert their Section 1983 claims under the Fourth and Fourteenth Amendments. (Compl. ¶¶ 56-76). The Eighth Amendment's prohibition against cruel and unusual punishment "places restraints on prison officials, who may not, for example, use excessive physical force against prisoners . . . [but it] also imposes duties on these officials, who must provide humane conditions of confinement . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal citation omitted) (citations omitted). The Due Process Clause of the Fourteenth Amendment incorporates these protections for pretrial detainees.[4] *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). Therefore, pretrial detainee conditions-of-confinement claims are analyzed "under the same rubric" as Eight Amendment prisoner claims. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

Conditions-of-confinement claims under the Eight Amendment rubric have an objective and subjective standard. *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*,

---

[3] Trinity does not contest that, as a private entity providing services delegated to it by LMDC, it was acting under color of state law. *See Amig v. Cnty. of Juniata*, 432 F. Supp. 3d 481, 487 (M.D. Pa. 2020) (a private drug testing company was acting under the color of law when delegated the duty of monitoring prison population for drug use); *West v. Atkins*, 487 U.S. 42, 55 (1988) (a private physician was acting under the color of law when providing medical treatment to prison inmates).

[4] McRae and Duncan were both pretrial detainees at the time of the alleged incidents. (Def.'s Mot. Summ. J. 1-2; Pls.' Resp. Def.'s Mot. Summ. J. 1).

511 U.S. at 834). Under the subjective prong, an official must subjectively "know[] of and disregard[] an excessive risk to inmate health or safety." *Wilson*, 961 F.3d at 840 (alterations in original) (quoting *Farmer*, 511 U.S. at 837). To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). The Sixth Circuit has held that the objective component of a conditions-of-confinement claim is proven where the detainee or prisoner is deprived of "adequate food, clothing, shelter, [medical care, and safety]." *Villegas*, 709 F.3d at 570 (alteration in original) (citing *Farmer*, 511 U.S. at 832).

However, the Sixth Circuit has found that allegations of "occasional foreign objects in food do not state an [E]ighth [A]mendment violation of the right to remain free from cruel and unusual punishment." *Cross v. McMackin*, 827 F.2d 769, 1987 WL 44544, at *1 (6th Cir. 1987) (citations omitted). Instead, to state a constitutional violation for unsanitary food preparation a prisoner must do more than allege an isolated incident of contamination.[5] Even more than one isolated incident is not necessarily enough to rise to the level of a constitutional violation. *See Harrell v. Blue*, No. 4:09CV-P104-M, 2010 WL 693497, at *3 (W.D. Ky. Fseb. 16, 2010) (two incidents of spit on a prisoner's food tray did not rise to the level of an Eighth Amendment violation). Instead, the Sixth Circuit has required a showing of some sort of irregularity, harm, or circumstance that "consistently create[s] conditions that fall below the 'minimal civilized measure of life's necessities as measured by a contemporary standard of decency.'" *Balcar v. Smith*, No. 17-5159, 2017 WL 3613479, at *2 (6th Cir. July 17, 2017) (citation omitted).

---

[5] *See, e.g.*, *Herbig v. Louisville Metro Dep't of Corr.*, No. 3:19-CV-P395-RGJ, 2019 WL 4478862, at *2-3 (W.D. Ky. Sept. 18, 2019) (a single incident of maggots in a prisoner's food does not rise to the level of an Eighth Amendment violation); *Crawford v. Bolton*, No. 3:17-CV-P535-DJH, 2018 WL 577986, at *2 (W.D. Ky. Jan. 26, 2018) (complaints of maggots in prison food do not rise to the level of an Eighth Amendment violation when the inmate only alleged one incident).

Plaintiffs each only allege a single incident of a foreign object in their food. (Compl. ¶¶ 13, 18). McRae claims that he bit into a piece of metal in June 2018 and Duncan alleges that there was a piece of wood in his food in September 2018. (Compl. ¶¶ 13-18). McRae and Duncan both also allege that they were injured by the incident: McRae received treatment for related headaches two weeks later and Duncan was also treated by the medical staff for his tooth injury. (Compl. ¶¶ 13-18). Accepting these allegations as true, Plaintiffs do not allege any facts indicating incarceration that "consistently create[s] conditions that fall below the 'minimal civilized measure of life's necessities as measured by a contemporary standard of decency.'" *Balcar*, 2017 WL 3613479, at *2. Although Plaintiffs allege physical injuries caused by the foreign objects, these injuries are not sufficient to establish a deprivation of rights. In *Murray v. Allen*, No. 10-1014, 2010 WL 4159261 (E.D. Pa. Oct. 21, 2010), the plaintiff alleged that while incarcerated he bit down on a tooth in his food, causing nausea, vomiting and headaches from the mouth injury. *Id.* at *1. The court found that despite the injury these allegations failed to establish a "serious claim of constitutional proportion."[6] *Id.* at *2.

In this instance, Plaintiffs have not alleged sufficient facts to show a "specific deprivation of a single human need . . . ." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). As such, Plaintiffs have failed to state a Section 1983 claim against Trinity.[7]

C. **Negligence**

Plaintiffs' negligence claim relies on the doctrine of *res ipsa loquitor*. (Compl. ¶¶ 77-88). "*Res ipsa loquitor* is an evidentiary doctrine which allows a jury to infer negligence on the part of

---

[6] *See also Duncan v. Metro Dep't of Corr.*, No. 3:13CV-P718-H, 2013 WL 6577037, at *2 (W.D. Ky. Dec. 13, 2013) (a one-time complaint of food poisoning is insufficient to allege a constitutional violation).

[7] Because there is no constitutional violation, Trinity's qualified immunity argument is moot.

9

the defendant." *Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 790 (Ky. App. 2012) (citing *Sadr v. Hager Beauty Sch., Inc.*, 723 S.W.2d 886, 887 (Ky. App. 1987)). Under Kentucky law, three requirements must exist to invoke the doctrine of *res ipsa loquitur*. First, the instrumentality that caused that caused the injury must be under the control and management of the defendant. *Vernon v. Gentry*, 334 S.W.2d 266, 268 (Ky. 1960) (citation omitted). Second, the circumstances must indicate that the accident could not have occurred in the absence of defendant's negligence. *Id.* Third, the plaintiff's injury must have resulted from the accident. *Id.*

The first element is at issue in this case. To rely on *res ipsa loquitor*, a plaintiff must demonstrate that Trinity was in "exclusive control" of the instrumentality that caused the injury. *Ryan*, 360 S.W.3d at 790. Trinity argues that Plaintiffs cannot rely on *res ipsa loquitor* because in this instance Trinity did not have "sole control over the food and trays delivered to Plaintiffs." (Def.'s Mot. Summ. J. 11). In *Ryan*, the court found that the plaintiff could not prove that a gas station had complete control of a gas pump which the plaintiff was operating at the time of the accident. *Ryan*, 360 S.W.3d at 790. Similarly, in this case Plaintiffs were handed the food and trays before they consumed the allegedly contaminated food which was under **their** control, not Trinity's. Further, Plaintiffs fail to present evidence that Trinity was in complete control even before the food and trays were given to Plaintiffs. On summary judgment, the burden on the moving party is satisfied by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Trinity argues that the food was passed out by other inmates, not by Trinity employees, a fact that is seemingly uncontested in that it was raised by Plaintiffs in their response. (Def.'s Reply Mot. Summ. J. 9, DN 54; Pls.' Resp. Def.'s Mot. Summ. J. 18). Plaintiffs point to nothing in the record that supports their contention that Trinity had total control over the food and trays even before they were given to Plaintiffs. Plaintiffs have, thus, not

10

satisfied the elements of *res ipsa loquitor,* which is a necessary part of their negligence claim. Therefore, summary judgment is appropriate on this claim.

### D. Products Liability

Trinity argues that summary judgment on Plaintiffs' products liability claim is appropriate because Plaintiffs have not produced necessary expert testimony. (Def.'s Mot. Summ. J. 12). Nowhere in Plaintiffs' response do they address Trinity's argument for summary judgment on this claim. As a result, Plaintiffs have waived their right to defend against summary judgment on their product liability claim. Where a "[p]laintiff does not respond to [an] argument, . . . the Court will construe his silence as a concession." *Butler v. City of Cincinnati*, No. 1:17-cv-604, 2020 U.S. Dist. LEXIS 132032, at *29 (S.D. Ohio July 27, 2020). This claim will be dismissed.

### E. KFDCA Claim

Similarly, Plaintiffs fail to respond to Trinity's argument that summary judgment is appropriate on Plaintiffs' KFDCA claim. As stated above, Plaintiffs have waived their defense against summary judgment on this claim. *Id*.

### F. Punitive Damages

Finally, Plaintiffs may not pursue punitive damages. Kentucky law holds that a plaintiff may not obtain punitive damages unless "there is evidence that the defendant acted with oppression, fraud, [or] malice," and Plaintiffs have not submitted any facts suggesting that Trinity acted as such. *See Thomas v. Greenview Hosp.*, Inc., 127 S.W.3d 663, 673 (Ky. 2004), *overruled on other grounds by Lanham v. Commonwealth*, 171 S.W.3d 14 (Ky. 2005). Furthermore, the

Court notes that Plaintiffs are not entitled to seek punitive damages because all of their other claims have been dismissed.

## V. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that Defendant Trinity Services Group's Motion for Summary Judgment (DN 48) is **GRANTED**, and Plaintiffs' claims against Trinity Services Group are **DISMISSED**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 16, 2022

cc: counsel of record